UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

UNITED STATES OF AMERICA,


     -against-                                                                 S1 04 Cr. 878 (CM)


THOMAS CULLEN,

           Defendant.
———————————————————————x

## DECISION ON DEFENDANT'S MOTIONS TO: DISMISS COUNTS ONE AND THREE OF THE SUPERSEDING INDICTMENT; REQUIRE THE GOVERNMENT TO PROVIDED A BILL OF PARTICULARS; AND FOR CERTAIN PRETRIAL DISCOVERY

McMahon, J.:

      Counts One and Three of the Indictment charge Thonas Cullen with violating the Wild Bird

Conservation Act (the "Act") (16 U.S.C. § 4902), by importing and causing to be imported Saker

falcons on or about September 1, 1999 and Black Sparrowhawks, which are also known as Black

Goshawks, on or about January 6, 2000. Count Two of the Indictment charges Cullen with violating

Sections 1001 and 2 of Title 18, United States Code, by sending to the United States Fish and

Wildlife Service applications for permits to import three Black Sparrowhawks which falsely

represented that the Sparrowhawks were the personal pets of two people other than Cullen, and by

sending to the Fish and Wildlife Service along with those applications copies of documents that

falsely stated that the Sparrowhawks had been sold to such other people.

      Cullen seeks to dismiss Counts One and Three of the second superseding indictment (the

"Indictment), claiming they are based on a statute which is void for vagueness and which suffers

from such ambiguity that the rule of lenity requires that it not be enforced against him. Cullen also

seeks orders directing the Government to produce its trial witnesses to be interviewed by Cullen's

counsel and investigator; provide a bill of particulars; disclose evidence and testimony it may use to cross-examine the defendant pursuant to Federal Rules of Evidence 608 and 609; and produce, a month prior to trial, evidence the Government may seek to offer pursuant to Federal Rules of Evidence 404(b), 807 and 902(11). In addition, Cullen asks the Court to preclude the Government from introducing any evidence at all pursuant to Federal Rule of Evidence 404(b).

The Government has filed papers in opposition to defendant's motions that are thorough, well reasoned and supported by the law. They establish that defendant is entitled to none of the relief he seeks. Accordingly, the defense motions are denied.

### The Wild Bird Conservation Act

In 1973, the United States signed the Convention on International Trade in Endangered Species of Wild Fauna and Flora (the "Convention"). *See* 16 U.S.C. § 4903(1). Species of flora and fauna are listed in different appendices to the Convention based on the level of threat to their existence. Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087, T.I.A.S. No. 8249, 1975 WL 165483.

In 1992, in order to promote the conservation of birds not indigenous to the United States, Congress passed the Wild Bird Conservation Act (the "Act"). *See* 16 U.S.C. § 4902. To achieve this goal, Congress imposed an immediate moratorium on the importation of any exotic (*i.e.*, not indigenous) bird of certain species listed in a report of the parties to the Convention, 16 U.S.C. § 4904(a)(1), authorized the Secretary of the Interior (the "Secretary") to suspend the importation of exotic birds of any species listed in any appendix to the Convention, 16 U.S.C. § 4904(b)(1), and prohibited, beginning a year after passage of the Act, the importation of any exotic bird of a species listed in any appendix to the Convention unless the Secretary made certain findings and included

the species on a list of species that may be imported. 16 U.S.C. § 4904(c) and 4905. The findings the Secretary is to make before including a species on a list of those that may be imported are different for captive bred and non-captive bred species. 16 U.S.C. § 4905 (b) and (c). The Secretary may also specify on the list of species that may be imported the particular breeding facilities from which such a species may be imported, after making certain findings with respect to those breeding facilities. 16 U.S.C. §§ 4905(a)(2)(B) and 4906. In addition, the Act authorized the Secretary to impose a moratorium or quota on importations of exotic birds of species not listed in an appendix to the Convention, or on the importation of all species of exotic birds from a particular country, if the Secretary made certain findings. 16 U.S.C. § 4907.

The Act authorizes the Secretary, notwithstanding the restrictions on importation of a species, to permit importation of a bird of that species if the Secretary "determines that such importation is not detrimental to the survival of the species and the bird is being imported exclusively for any of [several] purposes," one of which is "[a]s a personally owned pet of an individual who is returning to the United States after being continuously out of the country for a minimum of one year, except that an individual may not import more than 2 exotic birds under this paragraph in any year." 16 U.S.C. § 4911(2).

There are civil and criminal penalties for violation of the Act. 16 U.S.C. § 4912. The penalty provisions distinguish between persons in the business of importing exotic birds and others, specifying certain penalties for "[a]ny person who knowingly violates, and any person engaged in business as an importer of exotic birds who violates," certain provisions of the Act or permits issued under the Act. 16 U.S.C. § 4912(a)(2).

<u>The Indictment</u>

Counts One and Three of the Indictment charge Cullen with violating the Act by importing and causing to be imported Saker falcons on or about September 1, 1999 and Black Sparrowhawks, which are also known as Black Goshawks, on or about January 6, 2000. Those birds were imported under the Act's exemption for personally owned pets. The Government expects the proof to show that those birds were not the pets of the people to whom permits were issued and that the birds were, in reality, imported by and for Cullen. Count Two of the Indictment charges Cullen with violating Sections 1001 and 2 of Title 18, United States Code, by sending to the United States Fish and Wildlife Service applications for permits to import three Black Sparrowhawks which falsely represented that the Sparrowhawks were the personal pets of two people other than Cullen, and by sending to the Fish and Wildlife Service along with those applications copies of documents that falsely stated that the Sparrowhawks had been sold to such other people.

<u>Counts Two and Three are Not "Void for Vagueness"</u>

Cullen argues that the "Wild Bird Conservation Act" is unconstitutionally vague and that the rule of lenity requires that it not be enforced against him. Both the "void for vagueness" and the "rule of lenity" doctrines stem from the due process requirement that a statute make "it reasonably clear at the relevant time that the defendant's conduct was criminal." *See United States v. Lanier*, 520 U.S. 259, 265-67 (1997).

A vagueness challenge to a statute that does not implicate constitutionally protected conduct must be examined in light of the facts of the particular case. *See United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir. 1993); *United States v. Nadi*, 996 F.2d. 548, 550 (2d Cir. 1993). Such a statute can be struck down "only if the enactment is impermissibly vague in all of its applications. *Hoffman*

*Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. at 489, 495.   The Court asks two questions to

determine whether a statute is impermissibly vague in all its applications.   First, does the statute give

the person of ordinary intelligence a reasonable opportunity to know what is prohibited?   Second,

does it provide explicit standards for those who apply it?   *Grayned v. City of Rockford*, 408 U.S.

104, 108 (1972);   *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Whittaker*, 999 F.2d at

42; *Nadi*, 996 F.2d. at 550.   A statute is not unconstitutionally vague if the criminal offense is

defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement.   *Kolender*, 461

U.S. at 357.

   The rule of lenity is a "judicial doctrine that a court, in construing an ambiguous criminal

statute that sets out multiple or inconsistent punishments, should resolve the ambiguity in favor of

the more lenient punishment."   Blacks Law Dictionary (Seventh Ed.) at 1333.   The doctrine only

applies "when the equipoise of competing reasons cannot otherwise be resolved." *Johnson v. United

States*, 529 U.S. 694, 713 n.13 (2000).

> The simple existence of some statutory ambiguity  . . . is not sufficient to warrant
> application of th[e] rule [of lenity], for most statutes are ambiguous to some degree.
> The rule of lenity applies only if, after seizing everything from which aid can be
> derived, ... we can make no more than a guess as to what Congress intended.   To
> invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty
> in the statute.

*Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (citations and internal quotation marks

omitted).

   Cullen claims that the Act is unclear with respect to three things:  (1) whether it reaches birds

bred in captivity; (2) whether it includes birds that are not imported for a commercial purpose; and

(3) what is meant by "personal pet."  (Defendant Thomas Cullen's Memorandum of Law in Support

of His Motions, dated Feb. 3, 2005 ("Br."), at 5-6.

1. Captive Bred Birds

"We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *see also Harrison* v. *PPG Indus., Inc.,* 446 U.S. 578, 592 (1980)("[I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute.").

Here, the Act itself makes plain how Congress has chosen to deal with birds bred in captivity. The importation of any exotic (*i.e.*, non-indigenous) bird of certain protected species is prohibited, *see* 16 U.S.C. §§ 4904(a) and (c)(prohibiting the importation of "any exotic bird of a species" listed in certain documents). The Secretary may exempt from this blanket prohibition any species that the Secretary finds is regularly bred in captivity and whose wild members are not traded, 16 U.S.C. § 4905(b)(1), or a species that the Secretary finds is bred in a facility that has demonstrated, among other things, the capacity to satisfy the demand for birds to be imported from that facility with captive bred birds. 16 U.S.C. §§ 4905(a)(2)(B) & (b)(2) and 4906. If the Secretary makes the latter finding, only birds that are captive bred at such a facility can be imported. 16 U.S.C. § 4910(a)(1)(B). Regulations promulgated pursuant to the Act state the same rule. 50 C.F.R. § 15.11(b) and (e).

The Secretary's findings are published. *See* 16 U.S.C. § 4905 (requiring publication in the Federal Register); 50 C.F.R. §§ 15.33(a) (listing captive bred species whose importation is not

prohibited pursuant to the Act) and 15.42 (reserved for list of foreign qualifying facilities for breeding exotic birds in captivity). As a result, someone interested in importing a captive bred bird can readily and definitively determine, through resort to published materials, whether he or she can do so.

Cullen's argument is not that the statute or regulations are themselves unclear. Indeed, he concedes that "the Act could be read to ... encompass captive-bred birds ...." (Br. 5). Instead, Cullen argues from the title of the Act and its legislative history that Congress penned the Act to protect particular bird species in the wild and prevent them from being sold in the international pet trade. He urges that this purpose makes the scope of the Act unclear. (Br. 3, 4-5).

But "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-54 (1992) (citations and internal quotation marks omitted); *accord United States* v. *Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994). Here, there is no ambiguity in the Act. It says plainly that the importation of "any exotic bird of a species" listed in particular documents is prohibited. 16 U.S.C. §§ 4904(a) and (c) (emphasis added). *See United States* v. *Koh*, 199 F.3d 632, 637 (2d Cir. 1999) (use of term "any" with no limitation means "there is no ambiguity in the definition" that justifies narrowing it) (citing *Salinas* v. *United States*, 522 U.S. 52, 57 (1997) ("word 'any,' ... undercuts the attempt to impose this narrowing construction") and *Tambe* v. *Bowen*, 839 F.2d 108, 110 (2d Cir. 1988)("'Any' means without restriction or limitation"(quoting *Edwards* v. *McMahon*, 834 F.2d 796, 799 (9th Cir. 1987))). The Act also says plainly that captive bred exotic birds may be imported only when the species of which they are a part, or the facility at which they were bred, has been listed by the

Secretary.  16 U.S.C. §§ 4905(a)(2)(B) and (b), 4906.  That is the end of the debate.

Cullen's argument is not a supported by *United States* v. *Conners*, 606 F.2d 269 (10th Cir. 1979).  (*See* Br. 6).  *Conners* did not concern the statute at issue in this prosecution, but a different law, the Migratory Bird Treat Act,[1] which, as *Conners* noted, protected "only those migratory birds 'included in the terms of the conventions between the United States and'" Great Britain, Mexico and Japan.  606 F.2d at 271 (quoting 16 U.S.C. § 703).  While those treaties referred to many kinds of birds simply by type (*e.g.*, "geese," "swans"), ducks were treated differently.  Two of the three treaties covered only "wild ducks."  *Id.* at 271-72.  Similarly, the agency charged with enforcement of the treaties, the Fish and Wildlife Service, defined "migratory game birds" to include only "wild ducks."  *Id.* at 272.  Thus, the *Conners* court concluded that captive reared ducks fell outside the reach of the Migratory Bird Treaty Act.  *Id.*

In doing so, however, the *Conners* court "emphasize[d]" that it was not calling into question its holding in *United States* v. *Richards*, 583 F.2d 491 (10th Cir. 1978), in which it concluded that sparrowhawks raised in captivity <u>were</u> covered by the Migratory Bird Treaty Act since the relevant treaties and regulations did not distinguish between wild and captive-reared sparrowhawks.  *Id.* at 272 n.4.  And indeed in *Richards* the Tenth Circuit rejected, with respect to the Migratory Bird Treaty Act, an argument similar to Cullen's:

The purpose of the conventions, and of the [Migratory Bird Treaty] Act, is the

---

[1]Cullen refers to the Migratory Bird Treaty Act as "[c]ompanion legislation to the [Wild Bird Conservation] Act."  (Br. 6).  While both statutes protect birds, they were not companion legislation in any temporal sense.  The Migratory Bird Treaty Act was first enacted in 1918. *Conners*, 606 F.2d at 271.  The Wild Bird Conservation Act was enacted in 1992.  *See* 16 U.S.C.A. § 4901.

protection of migratory birds.  The statute covers migratory birds and makes no exception of captive migratory birds.  The failure to provide the exception does not make the statute ambiguous and justify resort to legislative history.  The fact that captive birds do not migrate is immaterial.  The question is whether the sparrow hawks which defendant sold belong to a species or group that migrate, not whether the particular birds migrate.

*Richards*, 583 F.2d at 495 (citation omitted).

In any event, even if application of the Migratory Bird Treaty Act were limited to wild birds, that would have no effect on the analysis of the Act at issue here, which, on its face plainly covers any exotic bird of certain species, whether wild or captive bred, unless the Secretary makes findings, which have not been made with respect to the species at issue in this case.

2.  Birds Imported for Non-Commercial Purposes

Cullen's argument that the Act is unclear with respect to importations that are not for commercial purposes also fails.  The language of the Act makes it plain that the Act's prohibitions apply regardless of whether birds are imported for commercial or non-commercial purposes.  The Act prohibits the importation of "any" exotic bird of a listed species.  16 U.S.C. §§ 4904(a)(1) & (c), 4910(a)(1)(A).  The Act also provides criminal penalties for both "[a]ny person who knowingly violates," and "any person engaged in business as an importer of exotic birds who violates" certain provisions of the Act and permits issued under the Act, 16 U.S.C. § 4912(a)(2)(A), making it clear that the Act applies to both those in the business of importing exotic birds for commercial purposes and those who are not in that business.  In addition, the Act provides a permit mechanism for importation for most non-commercial purposes, such as scientific research, returning to the United States with personally owned pets, zoological breeding or display programs and cooperative breeding programs, 16 U.S.C. § 4911, again making it plain that the Act's prohibition on importation otherwise applies to importations for those purposes.

3. Pets

Cullen's final claim of vagueness is that the Act is fatally devoid of a definition of the term "personal pet" (Br. 5-6; *see also* Br. 6 ("there is no guidance as to the scope of one of the key terms, 'pet,' ...")), as used in 16 U.S.C. § 4911(2). This claim, too, is meritless.

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States*, 444 U.S. 37, 42 (1979)(citation omitted); *accord United States* v. *Piervinanzi*, 23 F.3d at 677. "When the common meaning of a word provides both adequate notice of the conduct prohibited and standards for enforcement, a statute's failure to define a term will not render the statute unconstitutionally void for vagueness." *United States* v. *Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996)(citations omitted).

The words "pet" and "personal" are commonly understood. Pet is defined as "any domesticated or tamed animal that is kept as a companion and cared for affectionately." (Random House Dictionary of the English Language 1448 (2d ed. unabridged 1987)). "Personal" is defined as "of, pertaining to, or coming as from a particular person; individual; private." (*Id.* at 1445). Indeed, words of far less common understanding have been held to provide constitutionally adequate notice. *See, e.g., United States v. Roberts*, 363 F.3d 118 (2d Cir. 2004) (definition of "controlled substance analogue" as "substantially similar [in] chemical structure" not unconstitutionally vague as applied to particular drug); *United States* v. *Canales*, 91 F.3d 363, 368 (2d Cir. 1996) ("The street name 'crack' is not ambiguous, because crack has a common and ordinary meaning that is understood by [the defendant] ..., by others in the drug trade, and by citizens in communities that are plagued by the drug") (citation omitted); *Bingham* v. *Zolt*, 66 F.3d 553, 566 (2d Cir. 1995) ("We

have consistently held that RICO's pattern and enterprise requirements are not unconstitutionally vague.") (citations omitted); *United States* v. *Haun*, 90 F.3d at 1101 ("proceeds" as used in a money laundering statute "has a commonly accepted meaning," which provides an ordinary person the ability "to recognize whether the conduct in question is criminal."). *See also United States* v. *Brunshtein*, 344 F.3d 91, 98 (2d Cir. 2003) (elements of bribery statute coupled with judicial requirement of a "connection between the bribe and a risk to the integrity of the federal funded program" convey "a sufficiently definite warning as to the proscribed conduct when measured by common understanding."), *cert. denied*, 125 S.Ct. 35 (2004). The Act's failure to define personal pet does not render it unconstitutionally vague.

United States v. *Plaza Health Laboratories, Inc.*, 3 F.3d 643 (2d Cir. 1993), cited by Cullen for the proposition that the rule of lenity should be applied, (Br. 6-7), does not support his argument. The *Plaza Health* court found ambiguity in the application of the Clean Water Act's term "point source" to a human being. 3 F.3d at 649. "Point source" is defined in that statute as "'any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged.'" 3 F.3d at 645 (quoting 33 U.S.C. § 1362(14)). *Plaza Health* reached its finding of ambiguity because, *inter alia*, human beings were absent from the enumerated items in the definition; including human beings among point sources would make the lengthy statutory definition unnecessary; point source is used throughout the statute to refer to industrial and municipal discharges, not discharges by individuals; reading point source to include human beings would make the statute's prohibition incomprehensible; and there was no suggestion in the legislative history that Congress intended to

impose criminal liability on individual waste disposal. 3 F.3d at 646-47. No similar problems are posed by application of the Wild Bird Conservation Act to Cullen's conduct.

The vagueness and ambiguity Cullen claims to find in the Act as applied to his conduct simply is not there. Defendant's request that Counts One and Three be dismissed is denied.

Discovery Motions

A. Interview of the Government's Trial Witnesses

Cullen requests that the Court direct the Government to produce its witnesses for his counsel and investigator to interview. There is no authority for defendant's blanket request. Cullen appears, in his brief, to limit his request to the identities of the applicants for the licenses to import the exotic birds described in the Indictment. (Br. 14-15). With respect to those people, Cullen asks that the Government inquire whether they are willing to be interviewed by his counsel and investigator, and that the Government state on the record their answer. (Br. 15). The Government represents that each of those applicants is represented by counsel and that Cullen's counsel knows who those attorneys are and how to reach them. (Govt. Memo a 16).

This Court does not ordinarily involve itself in such matters. Since counsel and his investigator have the means to inquire whether the "license applicant witnesses" are willing to be interviewed, there is no need for the Court to be involved.

B. Bill of Particulars

A bill of particulars is required only where the indictment is so general that it does not advise the defendant of the specific acts of which he is accused. *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (citations omitted); *United States* v. *Gibson*, 175 F.Supp.2d 532, 536 (S.D.N.Y. 2001) ("[A] bill of particulars is not a matter of right"). A motion for a bill of particulars should be granted

only where necessary (1) to inform the accused of the charge against him with sufficient precision to enable him to prepare his defense and avoid surprise; and (2) to enable the accused to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. *See Wong Tai* v. *United States*, 273 U.S. 77, 82 (1927); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In addition, if the information sought by a defendant is provided in the indictment or through some other means, a bill of particulars is not necessary. *See Bortnovsky*, 820 F.2d at 574. "It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States* v. *Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985). Further, supplying evidentiary detail is not the function of the bill of particulars. *See Torres*, 901 F.2d at 234. "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *Gibson*, 175 F.Supp.2d at 537; *United States* v. *Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). If the information sought by a defendant is provided in the indictment or through some other means, a bill of particulars is not necessary. *See Bortnovsky*, 820 F.2d at 574.

A bill of particulars should not be required in order to detail the "wheres, whens, and with whoms" of the crime charged. *See United States* v. *Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (Government may not be compelled to provide a preview of its evidence; motions for "whens," "wheres" and "with whoms" are routinely denied). Moreover, it is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case. *United States* v. *Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989) (citations omitted); *United States* v.

*Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985).

The indictment itself gives defendant sufficient notice of the crime charged. It alleges that defendant illegally imported specific species of birds on specific dates. Counts One and Three of the Indictment charge Cullen with having imported and caused to be imported Saker falcons on or about September 1, 1999 and Black Sparrowhawks, also known as Black Goshawks, on or about January 6, 2000. Defendant is not entitled to particulars specifying the "manner and means" by which he caused those importations. The Government represents that more than 2,000 pages of discovery have been provided in this case. (*See* Affirmation of AUSA Stephen J. Ritchin, dated March 7, 2005 ("Ritchin Aff."), at Exhs. A-D.) Among the discovery are records related to these importations from the U.S. Fish & Wildlife Service, the U.S. Department of Agriculture, the U.S. Customs Service and a customs broker. Also included are records from banks, telephone companies, credit card companies, Federal Express, and the New York State Department of Environmental Conservation. (*Id.*). According to the Government, applications to import three Black Sparrowhawks have been produced in discovery, as have copies of envelopes mailed to the Fish and Wildlife Service on October 27, 1999 bearing Cullen's home address as the return addresses. (See Govt. Memo at 20-21). This is more than sufficient to allow defendant to prepare for trial.

Count Two is a false statements charge brought pursuant to Sections 1001 and 2 of Title 18, United States Code. Defendant asks that he also be provided with the particulars surrounding the alleged false statements. The Government states that it has provided as part of its discovery, copies of the document it alleges contain the false statement. (*Id.*) The Court is satisfied the Government has done what it says.

Accordingly, defendant's request for an order compelling the Government to provide a bill of particulars is denied.

C.     Rule 807 Evidence

Federal Rule of Evidence 807, which concerns the residual exception to the hearsay rule, provides that "a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant." However, "some latitude must be permitted [for non-compliance with the pretrial notice requirement] in situations ... in which the need does not become apparent until after the trial has commenced." *United States* v. *Iaconetti*, 540 F.2d 574, 578 (2d Cir. 1976) (footnote omitted).

Cullen asks for an order requiring 30 days notice prior to trial of such evidence. That is more than is necessary. The Government suggests that Cullen will have a "fair opportunity to prepare to meet" Rule 807 evidence if the Government gives notice of such evidence two weeks before trial, or, if the need to use such evidence becomes apparent after that point, immediately after such need becomes apparent.

The Government proposal is acceptable to the Court.

D.     Rule 902(11) Evidence

Federal Rule of Evidence 902(11), which makes extrinsic proof of authenticity unnecessary for certified domestic records of regularly conducted activity, *e.g.*, business records, provides that a "party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for

inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them."

Cullen asks for an order requiring 30 days notice prior to trial of such evidence. (Br. 8). The Government states that it will endeavor to provide at least three days notice prior to the introduction of records pursuant to Federal Rulue of Evidence 902(11), but submits that no order on this issue is appropriate now given that the number, length and source of the records that the Government will seek to introduce pursuant to this Rule is at this time unknown.

The Government is ordered to give Cullen prior five days notice of its intention to introduce such evidence. Since the Government will have to give the Court copies of its proposed exhibits five days before trial, this should not work any hardships.

E.      404(b) Evidence/ Brady/ Jencks Act

Cullen asks the Court to preclude the Government from introducing Rule 404(b) evidence at trial. Since the Government has not indicated whether it intends to introduce any such evidence, defendant's motion is premature. The Government proposes that it provide notice of Rule 404(b) evidence "two calendar weeks" before trial and that is acceptable to the Court. Accordingly, the Government is directed to notify defendant at least two weeks prior to the trial, of the general nature of any evidence of this type it intends to introduce at trial. *See e.g. United States v. Gutierrez-Flores*, No. 94 Cr. 393, 1994 WL 558034, at *4 (S.D.N.Y. October 11, 1994) (directing government "to comply with mandate of Rule 404(b) by providing . . . notice within 10 days before trial").

Based on the Government's representation that it is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and that the Government will continue to provide such information to the defendant in a timely fashion (Ritchin Aff. at Exh. A.), this Court will not

issue an order compelling the production of such materials. *See e.g. United States v. Gallo*, 1999 WL 9848, at *7 (S.D.N.Y. January 6, 1999); *United States v. Perez*, 940 F. Supp. 540, 543 (S.D.N.Y. 1996) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the Government, as here, has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*.). The Government is reminded of this Court's views concerning the seriousness of its *Brady* obligations. *United States v. St. Germain*, 2004 WL 1171403, S.D.N.Y., May 11, 2004.

Following the custom in this District with respect to all *Giglio* and 3500 material, the Court directs that the defendant be provided with this material at least three days prior to trial. Earlier, of course, would be better.

### Government's Motion for Reciprocal Discovery

The United States requests that the defendant be required to provided the Government with reciprocal discovery pursuant to Rule 16(b)(1)(A) and (B) of the Federal Rules of Criminal Procedure. That motion is granted.

Any *in limine* motions are to be filed at least two weeks prior to trial.

This constitutes the decision and order of the Court.

May 5, 2005

_____

U.S.D.J.

-17-